**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Advantage Media, L.L.C., and
Hispanic Chamber of Commerce of Minnesota,

**MEMORANDUM**

Plaintiffs,

**AND ORDER**

v.

Civil No. 04-04959 (MJD/JGL)

City of Hopkins,

Defendant.

---

E. Adam Webb, Webb & Porter, L.L.C., and Stephen W. Cooper, Cooper Law
Office, Counsel for Plaintiffs.

Paul Donald Reuvers, Iverson Reuvers, L.L.C., Counsel for Defendant.

---

## I.      INTRODUCTION

Plaintiffs Advantage Media, L.L.C., ("Advantage") and Hispanic Chamber of

Commerce of Minnesota claim that a sign ordinance in the City of Hopkins ("the

City") violates the First Amendment, both facially and as applied to them. The

instant matter before the Court is Plaintiffs' Motion for Preliminary Injunction

[Document No. 10] to enjoin enforcement of the ordinance, which was heard on

July 27, 2005. As more fully detailed below, Plaintiffs have demonstrated a

likelihood of success on the merits, and Plaintiffs' Motion for Preliminary

Injunction shall be granted.

## II.      FACTUAL BACKGROUND

The facts of this case are largely undisputed. Plaintiff Advantage is a

Minnesota company that develops and operates advertising signs used by

businesses, churches, organizations, and individuals to communicate both

commercial and noncommercial messages. Advantage claims that the City has a

shortage of advertising signs, so its representatives have expended substantial

time and effort investigating potential sign locations. All of the proposed locations

at issue are in commercial areas adjacent to major roadways.

The City's Sign Ordinance, HOPKINS ZONING CODE § 570 (the "Ordinance"),

regulates all signs within the City, stating, among other things:

> Permit Required. No or [sic] sign shall be erected,
> altered, reconstructed, maintained or moved in the city
> without first securing a permit therefor from the city.
> Application for a permit shall be in writing addressed to
> the zoning administrator and shall contain at least the
> following information:
>
>> a) the exact location of proposed sign including
>> the name, address and legal description of
>> premises;
>> b) the name and address of owner of sign;
>> c) the size and dimensions of sign;
>> d) the cost of sign; and
>> e) the purpose and intended duration.

HOPKINS ZONING CODE § 570.03 (emphasis in original).

The Ordinance states that its purpose is to "protect the public health safety,

morals, comfort, convenience and general welfare" and to "limit congestion in the

public right-of-way." HOPKINS CODE § 515.03 (Intent and Purpose). Section 570.54

of the Ordinance, which concerns the business park district, was enacted "to

establish and maintain high quality site planning, architecture, signage and

landscape design to create an attractive and unified development character."
HOPKINS ORDINANCE NO. 97-795; HOPKINS ZONING CODE § 541.01; see id. at
§ 570.54.

On or about November 23, 2004, Advantage submitted four sign
application packages to the authorized City official. That City official refused to
accept the applications for processing, despite Advantage's repeated requests.
Because of the City's refusal to process the applications, Advantage requested a
written statement regarding the processing of the applications. Again, the City
official refused to accept the applications and denied Advantage's request for a
written response. Despite the City's denial, Advantage left the completed
application packages with the City official for processing.

On December 4, 2004, the City mailed Advantage the application packages,
unprocessed. The City included a note simply stating that the application
packages were being returned. On January 21, 2005, the City Planner sent
Advantage a letter stating that "[t]hese applications were denied because they
failed to meet the size and location requirements set forth in the City's sign
ordinance." The proposed signs were 600 to 800 square feet, while the largest
sign permitted in the business district is 60 to 80 square feet. Advantage has not
posted the requested signs.

Plaintiff Hispanic Chamber of Commerce of Minnesota ("HCCM") is a
200-member nonprofit community and economic development organization that

provides training, technical assistance, workforce development, and other resources to Latino individuals and entrepreneurs. HCCM's members are primarily small businesses that benefit from signs such as those provided by Advantage, because such signs are often the most targeted and cost efficient means for HCCM's members to convey commercial and noncommercial messages. The topics of those messages include products, services, ideas, candidates, issues, and events, as well as political, ideological, and religious messages. HCCM claims that alternative avenues of communication, such as newspapers and television, are often cost-prohibitive or do not reach its targeted audience. HCCM seeks to post signs on their and others' property, but because of the City's enforcement of the Ordinance, HCCM claims that its members have refrained from erecting such signs in fear of civil and criminal penalties, including fines, forfeiture of property, and possible imprisonment.

Plaintiffs seek a preliminary injunction to enjoin the City from enforcing the Ordinance in its entirety.

## III.   DISCUSSION

### A.   Preliminary Injunction Standard

To prevail on a motion for preliminary injunction, a court must consider (1) the moving party's probability of success on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and

(4) the public interest in the issuance of the injunction. <u>Vonage Holding Corp. v.</u>

<u>Minn. Pub. Utils. Comm'n</u>, 290 F. Supp. 2d 993, 996 (D. Minn. 2003) (citing

<u>Dataphase Sys., Inc. v. C L Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en

banc)). No single factor is determinative; rather, the probability of success must

be examined in the context of the relative injuries to the parties and to the public.

<u>Dataphase</u>, 640 F.2d at 113; <u>see</u> <u>West Publ'g Co. v. Mead Data Cent., Inc.</u>, 799

F.2d 1219, 1222 (8th Cir. 1986). Although no one factor is determinative,

likelihood of success on the merits is generally the touchstone inquiry. <u>Dataphase</u>,

640 F.2d at 113. The party requesting injunctive relief bears the "complete

burden" of proving all of the factors. <u>Gelco Corp. v. Coniston Partners</u>, 811 F.2d

414, 418 (8th Cir. 1987).

      Plaintiffs have clearly satisfied the second, third, and fourth elements of the

preliminary injunction analysis. For each day that passes while Plaintiffs—or any

citizen—are deprived of the constitutional right to post and read signs, such a

delay establishes the threat of irreparable injury. <u>Elrod v. Burns</u>, 427 U.S. 347,

373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of

time, unquestionably constitutes irreparable injury.") (plurality opinion); <u>see</u> <u>Riley</u>

<u>v. Nat'l Fed'n of the Blind</u>, 487 U.S. 781, 802 (1988) (holding statute

unconstitutional, where "delay compels the speaker's silence"); <u>Mga Susu, Inc. v.</u>

<u>County of Benton</u>, 853 F. Supp. 1147, 1154 (D. Minn. 1994) (holding threat of

criminal prosecution for the exercise of First Amendment freedoms established threat of irreparable harm).

With regard to the third factor, the balance of harms favors granting an injunction where the threat to a plaintiff's First Amendment rights outweighs a city's impaired ability to exercise its police powers. See Bukaka, Inc. v. County of Benton, 852 F. Supp. 807, 811 (D. Minn. 1993) (holding that city's impaired police powers were outweighed by plaintiff's "serious and imminent" First Amendment rights). On the record before this Court, the balance of harms favors Plaintiffs' expression of their First Amendment rights.

The final factor, the public interest, is also present here, because "the public interest favors preventing enforcement of an ordinance that unconstitutionally restrains protected expression." Mga Susu, 853 F. Supp. at 1154.

Accordingly, to obtain a preliminary injunction, the success of Plaintiffs' motion hinges upon whether Plaintiffs bear their burden of demonstrating a substantial probability of success on the merits. The following sections analyze this factor.

## B.    Standing

As an initial matter, Defendant challenges Plaintiffs' standing to raise as-applied and facial challenges to the Ordinance. Plaintiff Advantage submitted a sign application, and the City denied that application—initially without a written reason, and later by providing a letter drafted almost 60 days later—stating that

the "applications were denied because they failed to meet the size and location requirements set forth in the City's sign ordinance." HCCM claims that its speech has been chilled because although its members would like to display messages in the City, the Ordinance prohibits them from doing so without being subject to the "unbridled discretionary authority of City officials."

### 1.    Traditional Standing

To establish standing, a plaintiff must demonstrate (1) that it has suffered an "injury in fact" which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the complained-of conduct and that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" (3) and that it is "likely" rather than merely "speculative" that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlfe, 504 U.S. 555, 560 (1992).

Advantage clearly has traditional standing because it submitted an application that the City initially refused to process, and later denied. This application and denial unmistakably demonstrates that Advantage has as-applied standing to challenge the Ordinance.

Further, because both Plaintiffs have submitted evidence that they have refrained from posting signs out of fear that the City will enforce its Ordinance against them, this self-censorship similarly gives them standing. See Krantz v. City

of Fort Smith, 160 F.3d 1214, 1217 (8th Cir. 1998) (holding that plaintiffs have standing where they "have alleged and have sufficiently demonstrated an actual and well-founded fear that the law in question will be enforced against them") (citing Steffel v. Thompson, 415 U.S. 452, 462 (1974)).

Defendant also challenges both HCCM's direct and associational standing to challenge the City's regulations, claiming that HCCM has no interest in the suit that is distinct from a member of the public. To support this assertion, Defendant points to another case before in this district in which Advantage Media sought to add HCCM as a party in a Motion to Amend Complaint to Join Plaintiff, which was referred to the Magistrate Judge. Advantage Media v. City of Eden Prarie, Case No. 04-3582 (DSD/SRN) (D. Minn). In the Eden Prairie case, Advantage filed its motion on March 11, 2005—two months before the May 15 discovery deadline. On June 16, after considering deposition testimony from HCCM's Executive Director Val Vargas, the Magistrate Judge denied Advantage's motion to add HCCM as a plaintiff, concluding that HCCM lacked both direct standing and associational standing. Eden Prarie, supra, at Docket No. 40. (June 16, 2005).

In an attempt to bolster its standing argument, Defendant points to the deposition testimony from the Eden Prarie case to support its claim that HCCM lacks standing in this case. Specifically, Defendant cites the depositions of Advantage principals Edward Daum and Dennis DuPont, as well as HCCM

8

Executive Director Val Vargas. The Court does not see the relevance of that evidence in this case.

Plaintiffs persuasively argue that the <u>Eden Prairie</u> testimony refers to a wholly different city and a wholly distinct ordinance, so the deposition testimony is inadmissible hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Such evidence is inadmissible unless it clearly falls within the purview of a recognized exception. FED. R. EVID. 802.

The City's proffered evidence of deposition testimony falls within the definition of hearsay. The questions and answers elicited may be enlightening as to that city and the facts of that case, but they do not provide insight into Plaintiffs' activities, perceptions, and intent with regard to the municipality at issue: the City of Hopkins. Here, the City would like to use that testimony to prove the truth of matters asserted regarding Hopkins, but that testimony is silent with regard to the City of Hopkins and its distinct Ordinance. Because the <u>Eden Prarie</u> deposition testimony stems from an unrelated case, because it is being offered as evidence to prove the truth of the matter asserted, and because it does not fall within a recognized exception to hearsay, that deposition testimony is inadmissible here. For similar reasons, the magistrate judge's conclusion that

HCCM lacks standing in the <u>Eden Prarie</u> matter is not persuasive with regard to this case, which involves a different city and different statute.

Rather, the only non-hearsay evidence in this record regarding HCCM's standing is the declaration of Val Vargas, which states that her organization's members have refrained from erecting signs on their or others' properties because they cannot risk civil and criminal penalties, including fines, forfeiture of property, and possible imprisonment. Because this record lacks admissible evidence to the contrary, this evidence is sufficient to demonstrate traditional standing.

**2.     Facial Challenge**

Defendant next argues that Plaintiffs lack sufficient standing to challenge the Ordinance on its face. The two means by which a plaintiff may challenge a statute or ordinance on its face are either (1) because it is unconstitutional in every conceivable application or (2) because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad. <u>Members of City Council of City of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 797 (1984). The second means, the overbreadth doctrine, provides an exception to the general principle that a party may only assert their own rights and not the claims of third parties not before the court. <u>See</u> <u>Village of Schaumburg v. Citizens for a Better Env't</u>, 444 U.S. 620, 634 (1980).

10

Plaintiffs have standing to facially challenge the Ordinance because they have been injured by at least one provision of that Ordinance. <u>Tanner Adver. Group, L.L.C. v. Fayette County</u>, 411 F.3d 1272, 1227 (11th Cir. 2005) (holding that because sign company was injured by at least one provision of sign ordinance, it has standing to challenge entire ordinance under the overbreadth doctrine) (citing <u>Solantic, LLC v. City of Neptune Beach</u>, 410 F.3d 1250 (11th Cir. 2005) (holding plaintiff had standing to facially challenge all unconstitutional elements of ordinance, regardless of whether those provisions were enforced against it)). Further, HCCM's well-founded fear of prosecution because of the Ordinance similarly provides it with standing to mount a facial challenge to the Ordinance. <u>See City of Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 755-56 (1988) (holding that "one who is subject to the law may challenge it facially without the necessity of first applying for and being denied, a license"); <u>Ways v. City of Lincoln, Neb.</u>, 274 F.3d 514, 518 (8th Cir. 2001) ("An ordinance prohibiting a broad range of protected expression may be facially challenged as overbroad.").

### 3.    Conclusion: Standing

Here, the denial of Advantage's application, as well as HCCM's declaration that its members have a well-founded fear that the Ordinance will be enforced against them if they posted advertising, sufficiently demonstrate the requisite specific present objective harm or a threat of specific future harm. Because the

record in the instant case demonstrates that Advantage has applied for—and was denied—a permit for several signs, and because the evidence demonstrates that the Ordinance has precluded HCCM and its members from placing signs in the City, both Plaintiffs have demonstrated sufficient standing to challenge the constitutionality of the Ordinance.

### C.    Content-Based Regulation

Plaintiffs next make the substantive argument that the Ordinance is impermissibly content-based, in that it regulates all types of signs—categorizing and regulating them based upon content. See HOPKINS ZONING CODE § 570.24; 570.27; 570.29; 570.37; 570.39; 570.43; 570.51; 570.53; 570.54; 570.59.

### 1.    Considerations in Content-Based Inquiry.

Because signs are a protected form of expression, regulation of such expression must meet the appropriate level of scrutiny to satisfy constitutional limitations. City of Ladue v. Gilleo, 512 U.S. 43 (1994). The first inquiry in determining the level of scrutiny in a First Amendment analysis is whether the regulation is content-based or content-neutral. See id; Whitton v. City of Gladstone, Missouri, 54 F.3d 1400, 1403 (8th Cir. 1995).

Content-neutral regulations must be both subject-matter and viewpoint neutral, and those regulations are "justified without reference to the content of the regulated speech." Consolidated Edison v. Pub. Serv. Comm'n, 447 U.S. 530,

537 (1980); see City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 48 (1986);

Whitton, 54 F.3d at 1403. Such content-neutral regulations "are acceptable so

long as they are designed to serve a substantial government interest and do not

unreasonably limit alternative avenues of communication." City of Renton, 475

U.S. at 46-47.

Content-based regulations, in contrast, occur when the content of the

speech determines whether the speech is subject to restriction; such regulations

are subject to strict scrutiny. United States v. Playboy Entm't Group, Inc., 529 U.S.

803, 813 (2000); Whitton, 54 F.3d at 1403-04. Where an ordinance "prohibits

otherwise permitted speech solely on the basis of the subjects the speech

addresses," that ordinance is content-based and therefore unconstitutional. R.A.V.

v. City of St. Paul, 505 U.S. 377, 381 (1992).

The Supreme Court has stated that "[t]he principal inquiry in determining

content neutrality . . . is whether the government has adopted a regulation of

speech because of disagreement with the message it conveys." Ward v. Rock

Against Racism, 491 U.S. 781, 791 (1989) (citation omitted). The preferential

treatment of commercial speech over political speech renders an ordinance

subject-matter based, and necessarily content-based. See City of Ladue, 512 U.S.

at 47-48. Such a regulation "is constitutionally suspect because it grants certain

forms of commercial speech a greater degree of protection than noncommercial

political speech, a practice which a plurality of the Supreme Court held to be

content-based." <u>Whitton</u>, 54 F.3d 1400 at 1404-05.

### 2.    Whether Hopkins Sign Ordinance is Content-Based

An analysis of whether the Hopkins Ordinance is content-based first

requires an examination of that regulation's text.

As noted above, the Ordinance requires a permit for *all* signs in the City of

Hopkins. HOPKINS ZONING CODE § 570.03 ("No or [sic] sign shall be erected,

altered, reconstructed, maintained or moved in the city without first securing a

permit therefor from the city."). The Ordinance broadly defines a "sign" as

> an outdoor structure either stationary or movable,
> containing any writing, announcements, declaration,
> demonstration, display, illustration, insignia or
> illumination used to advertise or promote the
> distribution of any merchandise or the sale of other
> property or service of any person.

<u>Id.</u> at § 570.01, subd. 4. A "sign" is also defined as

> any billboard, showbill, showboard, or sign containing
> advertising or directional matter: the term does not
> include traffic directional signs erected and maintained
> pursuant to law.

<u>Id.</u> at § 570.01, subd. 2.

These definitions make no reference to size, height, or other physical

characteristics. Even a small sign of two square feet is an "advertising sign" or

"billboard" if it "directs attention to a business, commodity, service or

entertainment not exclusively related to the premise where such sign is located, or

to which it is affixed." Id. at § 570.01, subd. 5. The Ordinance prohibits the presence of such signs "within 500 feet of public parks, rest areas, or residential structures," and it requires removal of an existing sign if a residence is subsequently built within 500 feet of it. Id. at § 570.59. Thus, Plaintiffs accurately note that a residence is prohibited from erecting, without a permit, a small sign stating even such innocuous messages as "Go Vikings" or "Wal-Mart Destroys Small Businesses" because they would not be "exclusively related to the premise where such sign is located, or to which it is affixed." Id. at § 570.01, subd. 5.

The Ordinance contains a number of other clearly content-based subdivisions and definitions. Id. at §§ 570.01 subd. 8 (business signs), subd. 9 (directional signs), subd. 12 (governmental signs), subd. 13 (monuments), subd. 14 (name plates), subd. 18 (time/temperature signs); 570.24 (civic signs); 570.27 (political signs); 570.29 (construction signs); 570.37 (real estate signs); 570.39 (promotional signs for housing); 570.43 (signs showing identity of institutions or housing complex). Plaintiffs contend that through these definitions, the Ordinance improperly bases its regulation upon the content of the message.

In several areas, the Ordinance's regulation of size and duration is unquestionably based upon a sign's type and content. For example, political signs are restricted in size and duration, but other types of messages are given more latitude in both areas. Compare id. at §§ 570.27 (limiting residential political sign size to four square feet and to a duration of 30 days before and 7 days after an

15

election); 570.51(7) (four square feet); 570.53(9) (same), with id. at §§ 570.29

(construction signs may have 50 square feet and variable time limit); 570.31

(temporary signs with commercial content for new businesses may have 250

square feet and 60 days); 570.37 (limiting real estate signs to 25 square feet and

variable time limit); 570.39 (on-site promotional housing signs may be posted for

two years and may have 100 square feet, off-site have 32 square feet); 570.55

(permitting on-premises signs up to 60 days after use).

If an official must consider the content of a sign to determine whether an

ordinance applies, then that ordinance is content-based. Forsyth County v.

Nationalist Movement, 505 U.S. 123, 134 (1992) (striking ordinance in which an

official "must necessarily examine the content of the message that is conveyed');

Clear Channel Outdoor, Inc. v. City of St. Paul, No. 02-1060 (DWF/AJB) (D.

Minn. Aug. 4, 2003) (unreported), available at 2003 WL 21857830 at *4 (holding

unconstitutional a statute where an official "would need to read the sign in order

to determine whether it advertised off-premises or on-premises services or

commodities, and thus to determine whether the ordinance applies, the ordinance

imposes a content-based restriction"); see Café Erotica, 360 F.3d at 1284-85

(holding that an ordinance "should set forth specific content-neutral grounds

under which a sign permit may be denied") (citing Thomas v. Chicago Park Dist.,

534 U.S. 316, 322 (2002) (upholding an ordinance listing thirteen specific

grounds under which a permit application may be denied, none of which "has anything to do with what a speaker might say")).

Defendant relies upon Eleventh Circuit precedent in its argument that the Ordinance is content-neutral because it does not distinguish between *viewpoints*, but instead regulates *all types* of signs in the same manner without suppressing particular ideas or views. See Messer v. City of Douglasville, 975 F.2d 1505, 1509 (11th Cir. 1992); see also Granite State Outdoor Advertising v. City of St. Petersburg, 348 F.3d 1278, 1282 (11th Cir. 2003) (holding that ordinance was content-neutral because it was enacted to promote uniformity, preserve aesthetics, and foster safety, and because officials did not consider content of signs before rendering decisions). Defendant also looks to the Sixth Circuit in arguing that the Ordinance's size and height limitations are viewpoint- and content-neutral because they only regulate a sign's non-expressive elements. Prime Media Inc. v. City of Brentwood, 398 F.3d 814, 819 (6th Cir. 2005). Defendant lastly contends that Plaintiffs have an alternative communication avenue because they may feel free to submit billboards that satisfy the height and size restrictions. See id. (holding that alternative communication opportunities exists because ordinance permits billboards within the size regulations and do "not affect any individual's freedom to exercise the right to speak and to distribute literature in the same place where the posting of signs on public property is prohibited").

17

But in contrast to its sister circuits, the Eighth Circuit makes no such distinction regarding viewpoints but has instead held that an ordinance is content-based where "it makes impermissible distinctions based *solely* on the content or message conveyed by the sign." <u>Whitton v. City of Gladstone, Mo.</u>, 54 F.3d 1400, 1404 (8th Cir. 1995) (emphasis in original). The <u>Whitten</u> court noted that, like here, the types of words on regulated signs dictated their durational limitations. <u>Whitton</u>, 54 F.3d at 1404. Further, the Eighth Circuit expressly rejected an argument—similar to Defendant's here—that a regulation is constitutionally sound where its stated purpose is "justified without reference to the content of the regulated speech." <u>Id.</u> at 1406. As such, a regulation may not make a content-based distinction "for reasons unrelated to the legitimate interest that prompted the regulation." <u>Id.</u> at 1407. And under <u>Whitton</u>, the fact that Plaintiffs may have an alternative venue does not justify an Ordinance's content-based regulation of signs. <u>See generally</u> <u>id.</u> (declining to join dissent's position that alternative channels of speech existed). Here, because the Ordinance's classifications and regulations depend necessarily upon a sign's content, these distinctions clearly render the Ordinance content-based.

Lastly, Defendant argues that Plaintiffs' criticism regarding time limits for political signs is unfounded because the Ordinance section pertaining to the duration of political signs, HOPKINS ZONING CODE § 570.27, has been preempted by a state statute designating durational and numeric limits for noncommercial signs

during an election year. <u>See</u> MINN. STAT. § 211B.045 (stating that "all noncommercial signs of any size may be posted in any number from August 1 in a state general election year until ten days following the state general election").

But Section 211B.045 regulates only the number and duration of noncommercial signs during a "state general election year." <u>Id.</u> The state statute makes not mention of, and therefore does not preempt, the Ordinance's regulation of the size and location of political signs. <u>Compare</u> MINN. STAT. § 211B.045 (regulating number and duration) <u>with</u> HOPKINS ZONING CODE § 570.27 (regulating duration, size, and zoning district); <u>see generally</u> <u>Brayton v. City of New Brighton</u>, 519 N.W.2d 243 (Minn. Ct. App. 1994) (analyzing first-amendment issue regarding city ordinance without any reference to MINN. STAT. § 211B.045). Thus, the Ordinance continues to function with regard to regulation of political sign sizes and locations at all times. <u>See</u> <u>Goward v. City of Minneapolis</u>, 456 N.W.2d 460, 465 (Minn. Ct. App. 1990) (holding that an "exception for campaign-related signs renders the ordinance content-based"). Further, because Section 211B.045 specifically limits its application only to the "state general election year," and not to any other time, the Ordinance continues to regulate all political signs at all other times. Lastly, even if the portion of the Ordinance regulating political signs were fully preempted by state statute—and this Court explicitly holds that it is not—the Ordinance's other content-based

distinctions (e.g., real estate, promotional housing, etc.) would remain effective without being preempted by Section 211B.045.

Because the Ordinance's regulation of the size and duration of signs is necessarily dependent upon the content of the messages themselves, and because the Ordinance's content-based provisions are not preempted by state statute, Plaintiffs have demonstrated a substantial likelihood of success in showing that the Ordinance is content-based.

### (a)    Commercial vs. Non-Commercial Speech

Plaintiffs further contend that the regulation is impermissibly content-based because the Ordinance favors commercial speech over noncommercial speech. The Supreme Court has held that localities may not favor commercial over noncommercial speech in addressing similar urban issues. Metromedia, 453 U.S. at 513; see City of Ladue v. Gilleo, 512 U.S. 43, 50-51, 52 (1994) (invalidating sign regulation that banned most signs but made exceptions for commercial speech; holding that statutes may not discriminate based upon signs' messages and may not prohibit too much protected speech). The Supreme Court has also held that, regardless of a city's intent, the distinguishing between types of content renders an ordinance content-based. City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 429 (1993) (holding that ordinance banning use of newsracks to distribute commercial handbills but not newspapers was content-based because "whether any particular newsrack falls within the ban is determined by the

content of the publication resting inside that newsrack"). In the same way, Plaintiffs have demonstrated a substantial likelihood of success that the City's distinguishing between commercial speech (e.g., real estate) and noncommercial speech (e.g., political signs) renders the Ordinance content-based.

### D.    Strict Scrutiny of Content-Based Regulations

Because Plaintiffs have demonstrated a likelihood of success in demonstrating that the Ordinance is content-based, then that regulation "can stand only if it satisfies strict scrutiny." United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813 (2000) (citation omitted). To satisfy strict scrutiny, a regulation "must be narrowly tailored to promote a compelling Government interest." Id. Generally, a content-based regulation is unconstitutional unless the government proves that it is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." United States v. Dinwiddie, 76 F.3d 913, 921 (8th Cir. 1996) (quotation omitted). "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." Playboy, 529 U.S. at 813. The government bears the burden of proving that any proposed alternatives would not be as effective as the challenged statute. Reno v. ACLU, 521 U.S. 844, 874 (1997).

### 1.   Compelling Government Purpose

The first question is whether the Ordinance promotes a "compelling government interest." The Supreme Court has noted that "[t]he principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). The Eighth Circuit has interpreted Ward to "instruct reviewing courts to give controlling weight to what the court determines is the government's true purpose for enacting it." Whitton, 54 F.3d at 1406. Such a "compelling" interest serves as a higher standard than mere "substantial" state interests. See Whitton, 54 F.3d at 1409 (holding that traffic safety and aesthetic beauty are substantial, but not compelling, government interests).

Defendant states that the City's purposes in enacting the statute are to "protect the public health safety, morals, comfort, convenience and general welfare," and to "limit congestion in the public right-of-way." HOPKINS CODE § 515.03 (Intent and Purpose). In Whitton, the Eighth Circuit held that "a municipality's asserted interests in traffic safety and aesthetics, while significant, *have never been held to be compelling*." Id. at 1408 (emphasis added; citation omitted) (holding that ordinance's durational restrictions on political signs failed to satisfy strict scrutiny). The Eighth Circuit had previously held that a city's interests in aesthetics, safety, and property values are substantial, but they are not

sufficiently "compelling" to support a content-based restriction that is not the least restrictive alternative. <u>Gilleo v. City of Ladue</u>, 986 F.2d 1180, 1181-82, 1183-84 (8th Cir. 1993), <u>aff'd</u> 512 U.S. 43 (1994).

Plaintiffs have demonstrated a substantial likelihood of success in showing that while the City's proffered intent and interests may be significant, they are not sufficiently compelling to withstand strict scrutiny.

### 2.    Narrowly Tailored; Least Restrictive Means

To survive strict scrutiny, the government bears the burden of showing that the Ordinance is "narrowly tailored" to promote its compelling interest. <u>Playboy</u>, 529 U.S. at 813. Both the Supreme Court and this District have held that a regulation must set forth and follow "definite and objective standards" if government officials are "empowered to limit citizens' ability to express themselves." <u>Young v. City of Roseville</u>, 78 F. Supp. 2d 970, 975 (D. Minn. 1999) (cataloging cases, including <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215 (1990)).

In light of Defendant's stated interests in safety and aesthetics, including sign size, the distinctions provided by the Ordinance (e.g., regarding political signs, governmental signs, civic signs; and distinguishing city groups, governmental agencies, churches, synagogues, schools, golf courses, and country clubs) are not narrowly tailored (or the least restrictive means) to promote that interest. The City could clearly regulate sign size without regard to a sign's content, or in the parlance of the Ordinance, a sign's "purpose." HOPKINS ZONING

CODE § 570.03. If the those content-based distinctions were eliminated from the Ordinance, keeping a globally applicable size-limitation provision or size limitation by zoning district, this might demonstrate a less-restrictive means of achieving the City's interests in safety or aesthetics. But as the Ordinance now stands, Plaintiffs have demonstrated a likelihood of success in demonstrating that the Ordinance is not narrowly tailored to further the City's interests, nor is it the least restrictive means of regulating those interests.

### E.   Central Hudson – Content-Based Regulations of Commercial Speech

Where content-based restrictions apply to commercial speech, courts use the test set forth in Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557 (1980). A content-based restriction on commercial speech violates the First Amendment unless that restriction (1) is not unlawful, false, or misleading; (2) seeks to implement a substantial governmental interest; (3) directly advances that interest; and (4) reaches no further than necessary to accomplish that interest. Central Hudson, 447 U.S. at 566. Because it is undisputed that the speech at issue is not unlawful, false, or misleading, and because it is clear that the City has a substantial state interest in traffic safety and aesthetics under Whitton v. City of Gladstone, Mo., 54 F.3d 1400, 1409 (8th Cir. 1995) ("while traffic safety and aesthetic beauty are admittedly substantial interests, they are not compelling governmental interests"), the analysis under Central Hudson here is limited to the final two factors.

### 1.   Direct Advancement of Substantial Government Interest

Plaintiffs assert that the City's interest in safety and aesthetics is not substantial, and the Ordinance does not directly advance any such interest. The requirement under <u>Central Hudson</u> that the government interest be "substantial" is lower than that required for the strict-scrutiny analysis, outlined above. <u>See Whitton</u>, 54 F.3d at 1409 (holding that "while traffic safety and aesthetic beauty are admittedly substantial interests, they are not compelling governmental interests."). <u>Whitton's</u> holding that safety and aesthetics are "substantial interests," the Ordinance satisfies the "substantial government interest" prong of the <u>Central Hudson</u> analysis.

### 2.   Narrow Tailoring to Substantial Government Interest

To survive constitutional scrutiny, a regulation must also be narrowly tailored to further any such substantial government interest. This narrow tailoring must be "a 'fit' between the legislature's ends and the means chosen to accomplish those ends." <u>Bd. of Trustees of State Univ. of N.Y. v. Fox</u>, 492 U.S. 469, 480 (1989) (quotation omitted). A constitutionally acceptable fit is one:

> that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served; that employs to the least restrictive means but, as we have put it in the other contexts discussed above, a means narrowly tailored to achieve the desired objective.

Id.; see City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 424 (1993) (holding that ordinance prohibiting commercial-handbill distribution not "reasonable fit" to interest in safety and esthetics; its distinction between commercial and non-commercial speech is impermissible means of responding to admittedly legitimate interests because it "bears no relationship *whatsoever* to the particular interests that the city has asserted") (emphasis in original).

Here, the Ordinance at issue states that the its intent and purpose is to "protect the public health safety, morals, comfort, convenience and general welfare," and to "limit congestion in the public right-of-way." HOPKINS CODE § 515.03 (Intent and Purpose). Just as the ordinance in City of Cincinnati failed to connect its interests with the distinctions between commercial and non-commercial speech, the City's legitimate interests in orderly development, health, safety, and morals bear no relationship to the Ordinance's distinguishing between political signs, real estate signs, commercial signs, and other content-based distinctions. Hopkins may have believed that its chosen method of regulation furthers a significant governmental interest, but its differing regulations for political, real estate, and commercial signs are not narrowly tailored. Rather, Plaintiffs have demonstrated a substantial likelihood of success in showing that the City's purposes would be furthered without distinguishing between ***types*** of speech, as the Ordinance currently stands.

### 3.    Conclusion: <u>Central Hudson</u> Test

Because the determination of a sign's duration and size are dependent upon the content of the speech, and because those factors are not related to the City's proffered interests in safety and aesthetics, the Ordinance is not narrowly tailored to further those interests. As such, Plaintiffs have also demonstrated a substantial likelihood of success on the merits with regard to the <u>Central Hudson</u> test.

### F.    Prior Restraint

Plaintiffs next argue that the Ordinance creates an impermissible prior restraint of speech. Requiring a permit to engage in an activity protected by the First Amendment constitutes prior restraint. <u>Mga Susu v. City of Benton</u>, 853 F. Supp. 1147, 1151 (D. Minn. 1994). Although courts impose a "heavy presumption" against the validity of any prior restraint, a government may, in some instances, balance competing uses of public forums by imposing permit requirements. <u>Forsyth County, Ga. v. Nationalist Movement</u>, 505 U.S. 123, 130 (1992). The degree of safeguards required in such cases depends on whether the sign ordinance is content-based or content-neutral.

A content-neutral regulation requires only "adequate standards to guide the official's decision and render it subject to effective judicial review." <u>Thomas v. Chicago Park Dist.</u>, 534 U.S. 316, 323 (2002). But a content-based regulation, such as the Ordinance at issue, must meet the following three requirements:

> (1) any restraint prior to judicial review can be imposed
> only for a specified brief period during which the status
> quo must be maintained; (2) expeditious judicial review
> of that decision must be available; and (3) the censor
> must bear the burden of going to court to suppress the
> speech and must bear the burden of proof once in court.

Id. (citing Freedman v. Maryland, 380 U.S. 51, 58-60 (1965)) (quotation
omitted). Plaintiffs assert that the Ordinance lacks the second requirement,
expeditious judicial review.

### 1.    Prompt Judicial Review

The Ordinance allows persons who disagree with the City's determinations
regarding zoning issues to file, within 90 days, an appeal with the Board of
Adjustment, which then rules within 60 days, unless a 60-day extension is
requested. HOPKINS ZONING CODE § 525.15, subd. 3. If applicants choose to appeal
the Board's decision, they may seek review by a Minnesota State District Court,
which allows for expedited case assignment. MINN. STAT. § 462.361 (providing for
district court's review of municipalities' ordinances, rules, regulations, decisions
and orders); see MINN. R. GEN. PRAC. 111.02; MINN. R. CIV. APP. P. 118; City of
Littleton, Colo. v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774, 781-82 (2004) (finding
ordinary rules of court in Colorado, which are similar to those in Minnesota,
assure prompt decision for applicant who seeks judicial review of license denial).

The above binding rules of judicial review, as well as the presumption that
"courts are aware of the constitutional need to avoid undue delay resulting in the

unconstitutional suppression of protected speech," provides for adequate safeguards in Hopkins ordinance. See Littleton, 541 U.S. at 782 (quotation and modification omitted). As such, Plaintiffs have failed to demonstrate a substantial likelihood of success in showing that the Ordinance lacks the proper procedural safeguards.

### G.    Equal Protection

Plaintiffs lastly contend that the Ordinance violates equal protection by favoring signs posted by certain businesses and organizations over others, such as Plaintiffs. Under the Equal Protection Clause of the Fourteenth Amendment, which prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted).

To establish a violation of equal protection based on selective enforcement, a plaintiff must ordinarily show that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994) (quotation omitted).

The Ordinance at issue provides exemptions and regulations for undefined civic and city groups, various governmental agencies, churches, synagogues, schools, golf courses, country clubs, apartments, colleges, and health-care centers. HOPKINS ZONING CODE §§ 570.24; 570.46.[1] Plaintiffs persuasively argue that section 570.46 favors, without any justification, the speech of religious non-profit organizations over other non-profit organizations, such as the HCCM, the Elks Club, or the Masons.

"Like other classifications, regulatory distinctions among different kinds of speech may fall afoul of the Equal Protection Clause." City of Ladue, 512 U.S. at 51 n.9. When confronted with similar ordinance text, another district court has held that

> Granting an exception for temporary signage only when erected by such entities as semi-public agencies, nonprofit organizations, or "permitted clubs", or only in connection with limited and vaguely defined events, shows an impermissible favoritism for certain types of non-commercial speech and certain types of speakers and, additionally, **leaves open the door to abuse of discretion in determinations of who qualifies for the exception**.

---

[1]   Those sections state, in part, "Civic and City groups are allowed temporary signs for city-wide and community events," "Temporary civic signs are a permitted use across the right-of-way on Mainstreet," and Signs may be permitted by Conditional Use Permit for public parks and playgrounds, churches, synagogues, public libraries, public museums, public and parochial schools, municipal buildings, golf course, country clubs, apartment buildings, nursing homes, community centers, colleges, universities and private schools, hospitals, and sanitarium." HOPKINS ZONING CODE §§ 570.24; 570.46.

<u>Nat'l Adver. Co. v. Town of Babylon</u>, 703 F. Supp. 228, 239 (E.D.N.Y. 1989)

(emphasis added), <u>aff'd in part, rev'd in part on other grounds</u> by 900 F.2d 551

(2d Cir. 1990) (holding that exemptions from noncommercial speech restriction

"impermissibly discriminates between types of noncommercial speech based upon

content"); <u>see also</u> <u>Metromedia, Inc. v. San Diego</u>, 453 U.S. 490, 515 (1981)

("With respect to noncommercial speech, the city may not choose the appropriate

subjects for public discourse.").

Defendant makes the cursory argument that because Advantage's permits

were denied due to size restrictions, Plaintiffs cannot show that their signs were

selectively rejected in contrast to others similarly situated. But such a

demonstration is not necessary where, as here, Plaintiffs mount a facial challenge

to the statute. If an ordinance impermissibly interferes with the exercise of a

fundamental right, such as the speech rights of certain classes of persons, without

being necessary to further a compelling state interest, it violates equal protection.

<u>See</u> <u>Massachusetts v. Murgia</u>, 427 U.S. 307, 312 (1976).

In light of the above, Plaintiffs have demonstrated a substantial likelihood

of success on the merits regarding Equal Protection. Sections 570.24 and 570.46

favor granting permits to churches, synagogues, apartments, and civic

organizations—to the exclusion of secular non-profit organizations like the Elks

and non-named religious centers, such as mosques—without providing a

31

compelling state interest in doing so. As such, Plaintiffs have demonstrated a

strong likelihood of success regarding their Equal Protection argument.

### H.     Severability

Defendant makes the final argument that if the Court determines that if any

provision of the Ordinance is unconstitutional, then that particular provision

could be severed from the whole. Severability of a local ordinance is a question of

state law. City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 772 (1988).

Minnesota statutes provide guidance on how partial invalidity of a statute should

be implemented. MINN. STAT. § 645.20; see Chanhassen Estates Residents Ass'n v.

City of Chanhassen, 342 N.W.2d 335, 339 n.3 (Minn. 1984) (applying rules of

statutory construction to municipal ordinances); see also Nightclub Mgmt., Ltd. v.

City of Cannon Falls, 95 F. Supp. 2d 1027 (D. Minn. 2000) (applying section

645.20 to municipal ordinance). Section 645.20 states as follows:

> Unless there is a provision in the law that the provisions
> shall not be severable, the provisions of all laws shall be
> severable. If any provision of a law is found to be
> unconstitutional and void, the **remaining provisions of
> the law shall remain valid, unless** the court finds the valid
> provisions of the law are so **essentially and inseparably
> connected with, and so dependent upon, the void
> provisions** that the court cannot presume the legislature
> would have enacted the remaining valid provisions
> without the void one; or unless the court finds the
> **remaining valid provisions, standing alone, are incomplete
> and are incapable of being executed** in accordance with
> the legislative intent.

MINN. STAT. § 645.20 (emphasis added).

32

Plaintiffs persuasively contend that the challenged content-based regulations (and regulations violating equal protection) are pervasive and are scattered throughout the ordinance, so the few provisions that would remain after severing the offending portions would be incapable of execution. Rather, the Court would have to fill a legislative role by supplying constitutionally sound language, and that remedy is clearly prohibited. E.g., Chapman v. Comm'r of Revenue, 651 N.W.2d 825, 836 (Minn. 2002) (holding that a court "cannot add language to a statute in order to render it constitutionally permissible").

Removal of the offending sections would render the Ordinance a mere shell of its current construction. Plaintiffs have demonstrated a substantial likelihood of success with regard to the following content-based portions of the Ordinance: §§ 570.01 subd. 8 (business signs), subd. 9 (directional, non-advertising signs), subd. 12 (governmental signs), subd. 13 (monuments), subd. 14 (name plates), subd. 18 (time/temperature signs); 570.03 (permit required); 570.24 (civic signs); 570.27 (political signs); 570.29 (construction signs); 570.37 (real estate signs); 570.39 (promotional signs for housing); 570.43 (signs showing identity of institutions or housing complex). Similarly, the following sections are impermissibly content-based because they refer to, and necessarily depend upon, the content-based portions above: 570.51 (R districts); 570.53 (B and I districts); and 570.54 (business park district).

If the court were to remove these offending sections of the Ordinance, which comprise a great portion of Section 570, "the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." MINN. STAT. § 645.20; see Chicago & N.W. Ry. Co. v. R.R. & Warehouse Comm'n of Minn., 280 F. 387, 400 (D. Minn. 1922) (holding that entire statute must fail because invalid portions were "vital" and because of improbability that legislature would have passed statute without the offending portions). Accordingly, the Court concludes that Plaintiffs have demonstrated a substantial likelihood of success that the remainder of the Sign Ordinance, Section 570 of the Hopkins Zoning Code, is unenforceable.

## IV.    CONCLUSION

Because Plaintiffs have successfully demonstrated the Dataphase elements, the Court concludes that a preliminary injunction preventing enforcement of the Section 570 of the Hopkins Zoning Code.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Document No. 10] is **GRANTED.**

Dated: July 29, 2005              s/ Michael J. Davis
                                  Judge Michael J. Davis
                                  United States District Court