## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**ADVANTAGE MEDIA, L.L.C., AND
HISPANIC CHAMBER OF COMMERCE
OF MINNESOTA,**

|  |  |
|---|---|
| **Plaintiffs,** | **MEMORANDUM OF LAW & ORDER** |
| **v.** | Civil No. 04-4959 (MJD/AJB) |
| **CITY OF HOPKINS,** | |
| **Defendant.** | |

---

E. Adam Webb, Webb & Porter, L.L.C., and Stephen W. Cooper, Cooper Law Office, Counsel for Plaintiffs.

Paul Donald Reuvers and Jason J. Kuboushek, Iverson Reuvers, L.L.C., Counsel for Defendant.

---

## I.     INTRODUCTION

This matter is before the Court on Cross-Motions for Summary Judgment. Oral arguments were heard on September 9, 2005. Plaintiffs' Motion for Partial Summary Judgment asks this Court to order Defendant to allow Plaintiff Advantage Media to construct four billboards within the City of Hopkins. [Docket No. 20] Plaintiffs also request an award of damages and attorney's fees pursuant to 42 U.S.C §§ 1983, 1988. Defendant's Motion for Summary Judgment requests that the Court dismiss Plaintiffs' claims with prejudice. [Docket No. 23] The Court issues the following Memorandum of Law and Order.

## II.    FACTUAL BACKGROUND

Plaintiff Advantage Media, L.L.C. ("Advantage") is a Minnesota company that develops and operates advertising signs used by businesses, churches, organizations, and individuals to communicate both commercial and noncommercial messages.  All of the proposed sign locations are in commercial areas adjacent to major roadways.

Plaintiff Hispanic Chamber of Commerce of Minnesota ("HCCM") is a 200-member nonprofit community and economic development organization that provides training, technical assistance, workforce development, and other resources to Latino individuals and entrepreneurs.  HCCM's members are primarily small business owners.

Defendant is the City of Hopkins ("the City").  The City is a suburban community of over 17,000 residents located thirteen miles from Minneapolis and is approximately 98% developed with little remaining vacant land.  The City has no signs of the type that Advantage proposes to construct.

Advantage applied for permits to build four 672 square-foot tri-vision billboards in the City.  The City did not process, and subsequently denied, Advantage's permit applications.  Advantage filed suit against the City on December 8, 2004, alleging that the City's sign ordinance in effect at that time ("Former Ordinance") violated the First Amendment, both facially and as-applied to Advantage.  On July 5, 2005, Plaintiffs filed a Motion for a Preliminary

Injunction seeking to enjoin enforcement of the Former Ordinance.  This Court granted Advantage's Motion on July 29, 2005, and enjoined the City from enforcing the Former Ordinance.  <u>Advantage Media, L.L.C. v. City of Hopkins</u>, 379 F. Supp. 2d 1030, 1033 (D. Minn. 2005).  The Court held that Advantage successfully demonstrated a likelihood of success on the merits of its claims that the Former Ordinance was content-based, failed strict scrutiny analysis, favored commercial over non-commercial speech, and violated equal protection.  <u>Id.</u> at 1038-43, 1045-48.

On August 16, 2005, the Hopkins City Council repealed the Former Ordinance.  The City Council then enacted Ordinance No. 2005-955 entitled, "AN EMERGENCY ORDINANCE FOR THE PURPOSE OF PROTECTING THE HEALTH, SAFETY, AND WELFARE OF CITY RESIDENTS AND FOR REGULATING THE CONSTRUCTION, INSTALLATION AND MAINTENANCE OF SIGNS" ("2005 Ordinance").  The 2005 Ordinance was made effective immediately upon enactment on August 16, 2005.

The Former Ordinance and the 2005 Ordinance are similar for the most part.  The Former Ordinance read:

> <u>Permit Required</u>. No or [sic] sign shall be erected, altered, reconstructed, maintained or moved in the city without first securing a permit therefore from the city. Application for a permit shall be in writing addressed to the zoning administrator and shall contain at least the following information:

a) the exact location of proposed sign including the name, address and legal description of premises;

b) the name and address of owner of sign;

c) the size and dimensions of sign;

d) the cost of sign; and

e) the purpose and intended duration.

§ 570.03 (repealed).  The 2005 Ordinance now states:

Permit required.  No sign shall be erected, altered, reconstructed, maintained or moved in the city without first securing a permit from the city.  The content of the message or speech displayed on the sign shall not be reviewed or considered in determining whether to approve or deny a sign permit.  Application for a permit shall be in writing addressed to the zoning administrator and shall contain the following information:

a. names and addresses of the applicant, owners of the sign and lot;

b. the address at which any signs are to be erected;

c. the lot, block and addition at which the signs are to be erected and the street on which they are to front;

d. a complete set of plans showing the necessary elevations, distances, size and details to fully and clearly represent the construction and place of the signs;

e. the cost of the sign;

f. type of sign; (i.e. wall sign, monument sign, etc.);

g. certification by applicant indicating the application complies with all requirements of the sign ordinance; and

h. if the proposed sign is along state trunk highway or interstate highway, the application shall be accompanied by proof that the applicant has obtained a permit from the state for the sign.

§ 570.07.

Plaintiffs' Motion for Partial Summary Judgment asks the Court to enter an order allowing them to erect the four signs in question.  Plaintiffs also ask for an opportunity to prove their damages before a jury.  Defendant's Motion for Summary Judgment argues that the signs should not be developed because the proposed signs violate other provisions of the City's zoning laws, namely, the setback requirements and size restrictions within the 2005 Ordinance.

## III.   DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Id.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1388, 1341 (8th Cir. 1994) (citation omitted).

### B.  Standing

Initially, the Court addresses the issue of standing.  The July 29, 2005 Order granting Plaintiffs' Motion for Preliminary Injunction determined that both

Advantage and HCCM had standing to challenge the Former Ordinance.

<u>Advantage Media</u>, 379 F. Supp. 2d. at 1038.  Since then the parties have

completed discovery and new information has come to light.  For the reasons

stated below, HCCM no longer has direct or associational standing in this case.

Conversely, Advantage still has standing with respect to the Former Ordinance.

### 1.  HCCM

#### a.  Direct Standing

New deposition testimony of Velda Vargas, the President and CEO of

HCCM, conclusively demonstrates that HCCM lacks both direct and associational

standing.  Vargas's deposition proves that HCCM suffered no injury from the

Former Ordinance and has no interest in this lawsuit distinct from that of any

member of the general public.

The July 29, 2005 Order held that HCCM sufficiently demonstrated direct

standing to challenge the ordinance.  That ruling was based Vargas's declaration

that HCCM's members refrained from erecting signs because they could not risk

civil and criminal penalties, including fines, forfeiture of property, and possible

imprisonment.  At that time, Vargas's declaration was the only admissible

evidence available to analyze the direct standing question.  Because the record at

the time lacked any admissible evidence to the contrary, Vargas's declaration was

held to be sufficient to establish direct standing.

Vargas testified in a deposition on July 28, 2005.  Vargas's deposition shows that: (1) HCCM never applied for a permit to post a billboard in the City of Hopkins; (2) HCCM currently lacks the resources to engage in billboard advertising; (3) HCCM cannot identify any messages it refrained from posting because of the former sign ordinance; (4) HCCM earmarked funding for an advertising budget later in the year; and (5) HCCM is developing an advertisement to be placed in the City of Hopkins, however the message is still in the development stage.  Vargas stated that HCCM "would love to advertise" through billboard signs as soon as possible, but a lack of money and expertise has prevented HCCM from doing so.

To establish standing, a plaintiff must demonstrate (1) that it has suffered an "injury in fact," which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the complained-of conduct and that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" (3) and that it is "likely" rather than merely "speculative" the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlfe, 504 U.S. 555, 560-61 (1992).

Vargas's deposition testimony demonstrates that HCCM lacks direct standing.  Vargas's deposition testimony does not comport with her previous declaration that HCCM refrained from posting signs because it feared the Former

Ordinance.  Even though HCCM has earmarked funds for advertising in the future, Vargas's testimony shows that HCCM has zero dollars to advertise in 2005.  Even if HCCM successfully attained a permit today, it would be financially unable to develop a billboard sign.  Furthermore, the earmarked funds are for a general advertising budget and it is not clear how much money, if any, is intended for advertising through the medium of billboards.  Finally, HCCM cannot advertise now because its message is still being formulated.

In light of the deposition testimony, it is clear why HCCM has not inquired into, or applied for a permit to post the signs.  HCCM did not refrain from advertising through billboards because of a fear of the Former Ordinance.  Rather, HCCM is simply not yet in a position to advertise through billboards.  HCCM has no current advertising message, and it lacks the resources to participate in almost any manner of advertising.  HCCM has suffered no actual concrete injury from the presence of the Former Ordinance.  Because HCCM has no definite plans to advertise, its purported injuries are merely speculative and hypothetical.  See Lujan, 504 U.S. at 560-61.  A mere wish without the intent and means to act is not enough to establish direct standing.

### b.  Associational Standing

HCCM also lacks associational standing.  An association has standing to bring suit on behalf of its members when

(a) its members would otherwise have standing to sue in their own
right; (b) the interests it seeks to protect are germane to the
organization's purpose; and (c) neither the claim asserted nor the
relief requested requires the participation in the lawsuit of each of
the individual members.

Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977) (citation
omitted).  Plaintiffs have the burden to prove HCCM's associational standing.
Lujan, 504 U.S. at 560-61.  The primary question in determining associational
standing is whether a plaintiff has "alleged such a personal stake in the outcome
of the controversy as to warrant his invocation of federal-court jurisdiction."
Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79 (1982) (internal
quotations omitted).  Under some circumstances, an association may premise
standing upon injuries suffered by one or all of its members.  Int'l Union, United
Auto., Aerospace & Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 281-
82 (1986).

The ability of HCCM's members to engage in advertising through signs may
be germane to the organization's purpose of assisting Latino businesses with
economic development.  However, Vargas is not aware of any HCCM member
who has taken steps to advertise through signs.  No HCCM members in Hopkins
filed affidavits regarding their attempts or plans to advertise through signs.

HCCM was able to show associational standing in the preliminary
injunction action because the City's prior argument to show lack of standing, was
based on inadmissible hearsay.  Advantage Media, 379 F. Supp. 2d at 1037.

9

However, Vargas's deposition testimony and the lack of supporting affidavits tend to show that the HCCM members located in Hopkins would lack standing to sue in their own right.  Because HCCM is currently unable to advertise through billboards and no HCCM members have taken substantial steps to advertise through signs, HCCM's personal stake in the outcome of this case is minimal, and it therefore lacks associational standing.  See Coleman, 455 U.S. at 378-79.

Plaintiffs cite City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755-56 (1988) for the proposition that HCCM may challenge the ordinance without first applying for the necessary permits.  Pursuant to Plain Dealer, HCCM does not have to apply for a license to establish standing if the statute vests "unbridled discretion" in a government official.  Id.  Government regulations that allow "arbitrary application . . . [have] the potential for becoming a means of suppressing a particular point of view."  Forsyth County v. Nationalist Movement, 505 U.S. 123, 131 (1992).  "To curtail that risk, 'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.'"  Id. (citations omitted).  "The traditional requirements of standing are relaxed when the matter involves a prior restraint of speech or expression because of the potential for abuse of First Amendment rights."  Knoeffler v. Town of Mamakating, 87 F. Supp. 2d 322, 332 (S.D.N.Y. 2000).  Here, the plaintiff does not have to allege that the statute regulates his own conduct.  Rather, the plaintiff

is allowed to bring a challenge on the "assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."  Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973) (citation omitted).

However, the Hopkins official who reviewed Advantage's applications under the Former Ordinance did not possess the "unbridled discretion" that the Supreme Court speaks of.  In Plain Dealer, the ordinance allowed the Mayor of Lakewood to grant or deny applications for the installation of newspaper dispensing devices on public property by considering "such other terms and conditions deemed necessary and reasonable by the Mayor."  Id.  at 753-54. Dissatisfied with the ordinance, the newspaper publisher elected not to seek a permit, and challenged the law on its face.  Id.

There are two major First Amendment risks associated with unbridled licensing schemes: 1) "self-censorship by speakers in order to avoid being denied a license to speak;" and 2) "the difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied' without standards by which to measure the licensor's action."  Id. at 759 (emphasis added).  If the ordinance significantly threatens these risks, then the court "must entertain an immediate facial attack."  Id.  "The law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks."  Id.

HCCM's claim does not present the two risks associated with unbridled licensing schemes.  First, HCCM claims it censored itself because the Former Ordinance prohibited it from advertising "without being subject to the 'unbridled discretionary authority of City officials.'"  <u>Advantage Media</u>, 379 F. Supp. 2d at 1036.  However, Vargas's deposition testimony shows that it was not the threat of enforcement that discouraged HCCM members from posting signs.  Instead, HCCM members chose not to apply for a permit because they lacked the resources to advertise.

The second risk of unbridled licensing schemes is also absent.  It is not overly difficult to detect, review, and correct the content-based standards considered by the City's official.  The Former Ordinance contained a number of clearly content-based provisions.  However, the Former Ordinance did not give the Hopkins City Official the level of unbridled discretion referred to in <u>Plain Dealer Publishing, Co.</u>  Every consideration for sign permit applications was expressly laid out in the Former Ordinance.  The Former Ordinance did not allow the City official to consider any other un-enumerated terms or conditions with unlimited discretion.  <u>Plain Dealer Publishing Co.</u> addresses the entire absence of standards by which to judge the city official's conduct.  This is not the case here.

Finally, the Court finds that HCCM's purported injury cannot be redressed by a favorable decision.  <u>See</u> <u>Lujan</u>, 504 U.S. at 560.  If allowed to continue in this lawsuit, HCCM is still unable to advertise immediately.   Unlike HCCM, the

plaintiff in <u>Plain Dealer Publishing Co.</u> was not only subject to the law, but could also immediately benefit if the ordinance was redressed.  Even though HCCM "would like" to advertise through billboards, this is not enough to show a redressable injury.  Because the Hopkins City Official did not have unbridled discretion, and the risks of unbridled discretion are absent in this case, HCCM must satisfy the traditional standing requirements under Article III.  Accordingly, HCCM's claims are dismissed.

### 2.  Advantage Media's As-Applied Standing

Next, the City challenges Advantage's as-applied standing.  The Court's July 29 Order held that Advantage established as-applied standing because "it submitted an application that the City refused to process, and later denied." <u>Advantage Media</u>, 379 F. Supp. 2d at 1036.  The City contends that the applications were unprocessed only because Advantage Media's applications far exceeded the size limitations and location requirements set forth in the Former Ordinance.

Cities and municipalities may, within certain bounds, regulate the size and physical characteristics of signs and billboards.  <u>See</u> <u>City of Ladue v. Gilleo</u>, 512 U.S. 43, 48 (1994).  "It is common ground that governments may regulate the physical characteristics of signs – just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise." <u>Id.</u> Billboard regulations advance the police power interests of curbing community

blight and in promoting traffic safety.  Prime Media, Inc. v. City of Brentwood, 398 F.3d 814, 823 (6th Cir. 2005).

The stated purpose for the Former Ordinance was to "protect the public health safety, morals, comfort, convenience, and general welfare," and to "limit congestion in the public right-of-way."  Advantage Media, 379 F. Supp. 2d at 1034.  However, the Court again notes that a municipality's asserted interest in traffic safety and aesthetics alone, while significant, have never been found to be compelling enough to withstand strict scrutiny.  Id. at 1042.

Standing by themselves, the Former Ordinance's size, duration, and height restrictions may be valid content-neutral, time, place, and manner restrictions.  However, size and height restrictions based upon the content of the sign are unconstitutional.  See Sugarman v. Village of Chester, 192 F. Supp. 2d 282, 301-02 (S.D.N.Y. 2002) (holding that a sign ordinance's restriction on size of political campaign signs was a content-based restriction in violation of the First Amendment, where political signs were limited to sixteen square feet, but the ordinance permitted posting of temporary construction signs up to a maximum of thirty-two square feet).  In the Preliminary Injunction, the Court found that the Former Ordinance contained a number of "clearly content-based subdivisions and definitions."  Advantage Media, 379 F. Supp. 2d. at 1039.  In several areas, the Court found that application of the Former Ordinance's size and duration restrictions were inextricably based upon the proposed sign's content and that

Advantage was likely harmed by at least one of the content-based provisions in the Former Ordinance.  Id.  Because Advantage alleged a cognizable injury under the color of an unconstitutional law, it still has standing to pursue this matter.

### 3.  Advantage Media's Facial Standing

A plaintiff may challenge a statute or an ordinance on its face if (1) the law is unconstitutional in every conceivable application, or (2) the law is unconstitutionally overbroad because it seeks to prohibit such a broad range of protected conduct.  Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 797 (1984).  In the Preliminary Injunction, the Court concluded Advantage had standing to facially challenge the sign ordinance because it was likely injured by at least one provision of the ordinance. Advantage Media, 379 F. Supp. 2d. at 1037.

The City now argues Advantage lacks standing for a facial challenge because the proposed signs failed to adhere to the separate setback restrictions set forth in Section 535 of the Hopkins Zoning Ordinance.  Section 535 is a wholly separate provision of Hopkin's general zoning laws that addresses how far structures must be set back from roads and highways.  The section was not at issue during the Preliminary Injunction hearing and therefore it was not addressed in the Court's previous order.  The City contends Section 535.01 dictates that all uses permitted in business districts must meet the following setbacks:

Requirements for lots fronting state and county roads as follows:

Front yard                                    20 [feet]

Side yard                                     10 [feet]

§ 535.01.

The City argues that the proposed signs would clearly violate Section 535, which is still a valid zoning regulation.  Since the Former Ordinance was struck down in its entirety, the City now contends Section 535 must preclude the approval of Advantage's proposed signs, regardless of the constitutionality of the Former Ordinance.

Advantage's sign applications indicate that its proposed signs will have setbacks of "no less than one foot."  Advantage's proposed signs would be a clear violation of the City's zoning laws if the Court was only considering Section 535.  However, a plain reading of the Hopkins Zoning Ordinance shows that Section 535 was not meant to be read alone or intended to preempt the Former or 2005 Ordinances.  Section 535 is a general setback rule.  The Former Ordinance stated that, "[s]igns shall conform to building yard regulations for the zoning district in which the signs are located, except as otherwise specified in this section." § 570.23, subd. 2 (repealed).  The Former Ordinance allows lesser setbacks than those found in Section 535.  For example, the Former Ordinance expressly established a one-foot setback for front yards in the B-2 and B-3 business districts.  Front yards in the B-3 business district abutting a county road were given a ten-

foot setback requirement.  In addition, a five-foot setback was prescribed for side yards abutting county roads in the B-3 business district.

The specific law should govern over the more general law.  <u>Adamson v. Armco, Inc.</u>, 44 F.3d 650, 653 (8th Cir. 1995); <u>United States v. Hess</u>, 71 F.2d 78, 79 (8th Cir. 1934).  With respect to signs, Section 535 was not meant to be read in a vacuum.  If Section 535 were applied as the City submits, many of the existing signs within the City would now be out of compliance with the City's zoning laws.  The Former Ordinance was a comprehensive set of regulations regulating all aspects of signs, and therefore it was properly challenged by Advantage.

### C.  Severability

The City continues to maintain that the unconstitutional provisions in the Former Ordinance are severable from the whole.  The Court denied the City's prior argument that the challenged portions could be severed from the otherwise valid sections.  The Court held that the content-based regulations were so pervasive and scattered throughout the Former Ordinance that severance would render the ordinance a "mere shell of it current construction."  <u>Advantage Media</u>, 379 F. Supp. 2d. at 1047-48.  Accordingly, the Court enjoined the Former Ordinance in its entirety.

The Court will not revisit the issue of severability.  The City's renewal of this argument does not change the fact that the content-based portions were

abundantly tangled throughout the Former Ordinance.  The Court had no choice but to enjoin the entire sign ordinance.  More importantly, after the Preliminary Injunction, the City repealed the Former Ordinance.  It does not exist anymore.  The Court cannot sever something from nothing.  Thus, the City's argument here is moot.

### D.   Whether the City Should Be Ordered to Permit Advantage to Post the Requested Signs

The signs Advantage submitted for zoning approval are 672 square foot tri-vision billboards.  Tri-vision billboards are made up of four or six-inch vertical slats which rotate on a fixed time interval so that multiple messages can exist on the same billboard.  Only one message is visible at any given time.  Advantage proposes to build four billboards in the following zoning districts:

1)    8940 Excelsior Boulevard (B-3 business district)

2)    8820 Excelsior Boulevard (B-3 business district)

3)    509 2nd Avenue South (B-1 business district)

4)    919 Cambridge Street (B-1 business district)

Under the 2005 Ordinance, the largest sign permitted in the B-3 business district is 80 square feet.  § 570.41, subd. 2 (2005).  The largest sign now permitted in the B-1 business district is 60 square feet.  Id.  The maximum size permitted under both the 2005 and Former Ordinances is 250 square feet.  § 570.17 (2005); § 570.07 (repealed).

Analysis of whether Advantage is entitled to an order to erect these signs is dependent on two factors. The first question is whether Advantage's equitable request is governed by the 2005 Ordinance or the Former Ordinance. Second, is whether Advantage has established a vested right under Minnesota law to construct the signs.

### 1.    Whether the Former Ordinance or the 2005 Ordinance Controls

The 2005 Ordinance states: "This sign ordinance shall apply to all sign applications applied for and/or pending prior to its enactment." § 570.37 (2005). Under Minnesota law, the status of a zoning ordinance is to be determined at the time the Court is called upon to act, rather than when the property owner applies for permission to use the property for the particular purpose requested. See Rose Cliff Landscape Nursery v. City of Rosemount, 467 N.W.2d 641, 643-44 (Minn. Ct. App. 1991) (affirming summary judgment for the city based on a zoning amendment enacted subsequent to the city's denial of application which precluded the sought after use); Property Research & Dev. Co. v. City of Eagan, 289 N.W.2d 157, 157-58 (Minn. 1980) (concluding that mandamus order was inappropriate when the zoning ordinance was amended after the complaint was filed but prior to trial).

Advantage contends that it would be inequitable to let the 2005 Ordinance control and cites three federal cases to support this proposition. In Lamar Advertising Co. v. Township of Elmira, the court held that the rules in effect at the

time of application controlled.  328 F. Supp. 2d 725, 732 (E.D. Mich. 2004).  In Southern Cooperative Development Fund v. Driggers, the Eleventh Circuit held that a later-enacted zoning ordinance could not be retroactively applied to reject a landowner's subdivision plat application.  696 F.2d 1347, 1355 (11th Cir. 1983).  The Second Circuit likewise held that it would be inequitable to allow a change in zoning regulations to act as a bar for a previously valid proposed use.  754 Orange Ave. Inc. v. City of West Haven 761 F.2d 105, 113 (2d Cir. 1985).

Notwithstanding the cases above, Advantage's argument that the City must allow the construction of these 672 square foot tri-vision billboards fails.  All of the cases above address applications for an initially valid property use and a subsequent change in the zoning regulations that invalidated the use in question.  Advantage's 672 square foot billboards violate the 250 square foot size limitation in both the Former and 2005 Ordinances.  It will not be inequitable to make Advantage subject to the 2005 Ordinance's content neutral maximum size restrictions.  The 250 square foot size limitation in the 2005 Ordinance is a valid time, place, and manner restriction because it applies to all signs regardless of content.  The Former Ordinance also contained the exact same size restriction.

Unconstitutional laws have no force or effect and are inoperative as if they had never existed.  Norton v. Shelby County, 118 U.S. 425 (1886); Rodgers v. Mabelvale Extension Rd. Imp. Dist. No. 5, 103 F.2d 844, 846-47 (8th Cir. 1939).  Advantage essentially argues that since the Court enjoined the Former Ordinance,

it is not subject to any zoning regulations whatsoever.  The 250 square foot size limitation in the Former Ordinance was necessarily stricken because the Preliminary Injunction Order entirely enjoined Section 570.

However, this does not mean that Advantage has unlimited authority to put up any sign it wants to.   Although Advantage prevailed in the Preliminary Injunction action, it must still comply with the valid time, place, and manner restrictions in the 2005 Ordinance.  Advantage was fully aware of the 250 square foot size restriction when it initially filed its applications with the City.  It will not be unfair to make Advantage subject to the same size limitation contained in the 2005 Ordinance.  On the other hand, issuing an order allowing the construction of 672 square foot billboards will result in an inequitable result for the City.  The City has always forbidden such gigantic signs for valid safety and aesthetic reasons.  Because Advantage had full notice of the maximum size restrictions it must abide by those same restrictions in the 2005 Ordinance if it wishes to construct signs within the City.

Advantage argues that there are signs within the Hopkins area that exceed the 250 square foot limit and the City acknowledges this.  Advantage estimates that these larger signs are approximately 300-325 square feet.  However, Advantage's indication that larger signs exist in the City does not mean it, too, may construct signs larger than the maximum allowance.  Advantage failed to provide any evidence regarding how these other signs were approved.

Furthermore, there is no evidence of any sign in Hopkins that remotely

approaches the 672 square foot size that Advantage proposes to build.

Advantage's equitable request grossly overreaches beyond the Court's Preliminary

Injunction Order.  Accordingly, Advantage's equitable request is denied.

### 2.  Whether Advantage Has a Vested Right Under Minnesota Law

Advantage must also establish it has a vested right under Minnesota law to

obtain an equitable order to erect the signs in question.

> As a general rule, a right becomes vested when it has 'arisen upon a
> contract, or transaction in the nature of contract, authorized by
> statute and liabilities under that right have been so far determined
> that nothing remains to be done by the party asserting it.'  A mere
> expectation, desire, or intention to develop property in a particular
> way is not sufficient to create a vested right.  To acquire a vested
> right, a developer must have progressed significantly with physical
> aspects of the project or made a binding commitment to develop the
> property.  The purchase of property of acquisition of a building
> permit fails to create a vested right in development.  Likewise,
> neither a municipality's preliminary approval of a project nor a
> determination that a development plan would be consistent with
> applicable land-use regulations will create a vested right.

Concept Prop., LLP v. City of Minnetrista, 694 N.W.2d 804, 819-20 (Minn. Ct.

App. 2005) (citations omitted) (emphasis added).  Furthermore, the party

asserting a vested right must have made substantial expenditures or commitments

for a right to be vested.  Hawkinson v. Itasca County, 231 N.W.2d 279, 284

(Minn. 1975).

Plaintiff indicates that it is now obligated to purchase the four signs in

question, and has waived all contingencies to make these sales contracts absolute

and nonrefundable.  Four days after the Preliminary Injunction was granted,

Advantage modified its purchase contracts for the signs.  Each of the modified

sales contracts states:

> The above named "Seller" and "Buyer" hereby agrees as follows:
> Buyer has requested immediate action to fabricate and install the
> sign described herein.  On July 29, 2005, the federal court
> invalidated the City of Hopkins' Sign Ordinance.  <u>As such, this sign,</u>
> <u>which was originally applied for in November of 2004 (under the</u>
> <u>Sign Ordinance), can now be erected.</u>  As this status is not expected
> to continue indefinitely, Buyer has asked for expedited consideration
> of this contract.  In return for Seller's agreement to fabricate and
> arrange for installation of this sign before August 31, 2005, Buyer has
> agreed to waive all contingencies and to make its obligations under
> this contract absolute, immediate, and nonrefundable.

(emphasis added).

Since Advantage has waived all contingencies, it is now obligated to pay

$201,025 for all four signs.  Still, Advantage has not demonstrated a vested right

to erect its 672 square foot billboards.  Advantage's expenditure alone does satisfy

the tests in <u>Concept Properties</u> and <u>Hawkinson</u>.  First, spending a substantial

amount of money by itself does not satisfy <u>Concept Properties</u>.  Even under

<u>Concept Properties</u>, the actual purchase of real estate alone, undoubtedly a

substantial expenditure, does not create a vested right.  694 N.W.2d at 819-20.

After the grant of the Preliminary Injunction, Advantage only had a "mere

expectation, desire, or intention" to develop the signs in question.  <u>Id.</u>  Nowhere

in the Court's previous order did it say that Advantage could build 672 square foot

billboards.  Equity should not allow Advantage to artificially create a vested right.

Furthermore, Advantage's liabilities have not been "so far determined that

<u>nothing remains to be done by the party asserting it.</u>" <u>Id.</u> (emphasis added).  Also

relevant to this inquiry are the leases that Advantage must secure to build the

signs.  <u>Id.</u>  Advantage has only secured three of the four leases for its signs.  These

three leases contain the following provision:

> The city of Hopkins, MN. [sic] currently does not permit billboards
> which display off-premise advertising.  This lease is contingent upon
> ADVANTAGE being able to secure and maintain all required permits
> for the construction and maintenance of the outdoor advertising
> device.

Advantage has no obligations under these leases, unless it is able to secure the

required permits for construction.  That determination has not been "so far

determined that nothing remains to be done." <u>Id.</u>  Accordingly, the Court holds

Advantage has failed to establish a vested right.

Finally, the Court emphatically declares that nowhere in its prior

Preliminary Injunction Order did it say that the signs in question "can now be

erected."  Plaintiff is admonished for purposefully misconstruing the Court's

Preliminary Injunction in order to modify its contracts in its attempt to create an

artificial vested right.  Advantage may suffer a substantial detriment because it

obligated itself to pay for the signs.  However, it is not unjust to deny the sign

applications because Advantage's detriment was self-inflicted.  It was a misguided

attempt to attain an undeserved vested right.  Plaintiff Advantage alone must

suffer the consequences of getting ahead of itself by entering into this absolute

obligation before the Court was able to enter a final judgment.

### E. Mootness

The City argues that the adoption of the 2005 Ordinance renders

Advantage's equitable and legal claims moot.  Advantage requests an equitable

order to construct the signs in question.  Advantage also requests legal damages

and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988.  "Under Article III of

the Constitution, federal courts 'may adjudicate only actual, ongoing cases or

controversies."  Nat'l Right to Life Political Action Comm. v. Connor, 323 F.3d

684, 689 (8th Cir. 2003)  (quoting Lewis v. Continental Bank Corp., 494 U.S. 472,

477 (1990)).  The Connor court stated the following:

> The Supreme Court has repeatedly described the mootness doctrine
> as "the doctrine of standing set in a time frame: The requisite
> personal interest that must exist at the commencement of the
> litigation (standing) must continue throughout its existence
> (mootness)."  Thus "[we] do not have jurisdiction over cases in which
> 'due to the passage of time or a change in circumstances, the issues
> presented . . . will no longer be 'live' or the parties will no longer
> have a legally cognizable interest in the outcome of the litigation.'"

Connor, 323 F.3d at 691 (citations omitted).

### 1.    Equitable Claims

Generally, when an ordinance is repealed, an action based upon the

repealed ordinance is moot.  See McCarthy v. Ozark Sch. Dist., 359 F.3d 1029,

1035-36 (8th Cir. 2004) (finding that legislative amendments to a state law made

plaintiff's claims moot because no further appropriate relief was available). Advantage's claims for equitable relief are rendered moot because the City repealed the Former Ordinance. Advantage has received the entirety of its equitable relief. Plaintiffs are no longer subject to the Former Ordinance or its unconstitutional provisions. Advantage may resubmit its applications for sign permits without fear of the past content-based provisions. Advantage's equitable claim is moot.

The mootness doctrine does not apply if the case is "capable of repetition yet evad[es] review." Arkansas AFL-CIO v. F.C.C., 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc). In order for this exception to apply, there must be "a reasonable expectation that the same complaining party will be subject to the same action again." Van Bergen v. Minnesota, 59 F.3d 1541, 1547 (8th Cir. 1995). This exception does not apply to Advantage's equitable claim because the ordinance was enjoined, repealed, and a new ordinance was enacted. Advantage will not be subject to the same action again.

The doctrine of mootness is also subject to the voluntary cessation exception. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Alladin's Castle, Inc., 455 U.S. 283, 289 (1982). The Eighth Circuit noted that the voluntary cassation exception is

merely a specialized form of the "capable of repetition yet evading review"

exception.  <u>McCarthy</u>, 359 F.3d at 1036-37.

 Generally, if a challenged law is repealed or expires then the case becomes

moot.  <u>Native Vill. of Noatak v. Blatchford</u>, 38 F.3d 1505, 1510 (9th Cir. 1994).

The exception to this rule typically involves situations where it is practically

certain that the repealed law will be reenacted.  <u>Id.</u>

The City's wrongful behavior cannot be reasonably expected to reoccur.  As

mentioned before, the Former Ordinance was enjoined by the Court and

subsequently repealed by the City.  There is no indication or possibility that the

City will reenact the unlawful ordinance.

Advantage cites three Eighth Circuit decisions as examples of cases not

being rendered as moot when the government enacted amended laws.  However,

the cases that Plaintiff cites involve situations in which the city ceased its activity

<u>before</u> the Court had a chance to hear the matter.  In <u>Ways v. City of Lincoln</u>, the

plaintiff filed an action alleging that the ordinance in question was

unconstitutionally vague and overbroad in violation of the First Amendment.  274

F.3d 514, 516 (8th Cir. 2001).  The district court issued a preliminary injunction

enjoining enforcement of the ordinance.  <u>Id.</u>  Before the trial the City of Lincoln

amended the ordinance by adding an exemption that <u>effectively</u> <u>repealed</u> the

challenged ordinance.  <u>Id.</u>  The district court concluded that the case was not

moot under the voluntary cessation doctrine.  <u>Id.</u> at 517 n.4.  However, the

validity of the amended ordinance was not before the Eighth Circuit on appeal. Here, the Former Ordinance was not only "effectively repealed," but expressly repealed. Advantage is not subject to any of the unconstitutional provisions of the Former Ordinance.

Plaintiff's second case is also inapplicable to its claim in equity. In Stephenson v. Davenport Community School District, a high-school student brought a § 1983 action against the school district for requiring her to remove her tattoo. 110 F.3d 1303, 1304-05 (8th Cir. 1997). The student alleged that the school district's regulation prohibiting gang symbols violated her right to self-expression. Id. The Stephenson court held that graduation did not render the plaintiff's complaint moot because the student was making a claim for damages rather than injunctive relief. Id. at 1306. Stephenson has no bearing on Advantage's equitable claim.

The last case Advantage cites for support is United Food & Commercial Workers Int'l Union v. IBP, Inc., 857 F.2d 422 (8th Cir. 1998). Here, the Eighth Circuit refused to render the plaintiff's claims moot when the defendant disavowed any intention of enforcing the statute in question. Id. at 425, 429. Unlike the City, the defendant in United Food & Commercial Workers was free to return to its old ways. Id. This is not the case here. The City's Former Ordinance was entirely repealed. Accordingly, Advantage's equitable request for the City to

approve construction of the four billboards is denied.  It is not inequitable to have Advantage submit a new application under the City's 2005 Ordinance.

### 2.  Legal Claims

Plaintiffs' Amended Complaint included a plea for damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988.  A valid claim for damages saves a case from being moot.  Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 608-09 (2001).  See also Stephenson, 110 F.3d at 1306.  Therefore, Advantage's claim for damages is still a live controversy.

The next question then is whether Advantage is entitled to a damage award at this point in litigation because it was a "prevailing party" in the preliminary injunction matter.  A "prevailing party" is entitled to damages only if the plaintiff obtains "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  John T. v. Iowa Dept. of Educ., 258 F.3d 860, 863-64 (8th Cir. 2001) (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)).

The Court concludes that Advantage is not entitled to damages at this time, because it has not established that it is a prevailing party.  Success at the preliminary injunction stage does not mean that a party will automatically succeed at trial.  The factors considered for preliminary junctions are: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of hardships; and (4) the

29

public interest.  Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981)).  Advantage only demonstrated a "likelihood" of success on the merits in the previous matter.  Advantage Media, 379 F. Supp. 2d. at 1033.  The previous decision did not state that Advantage was the prevailing party nor did it award any kind of damages.  The cases Advantage cites for support are unhelpful as they are all appeals from final judgments on the merits.  See Warnock v. Archer, 380 F.3d 1076, 1079 (8th Cir. 2004); Lewis v. Wilson, 253 F.3d 1077, 1079 (8th Cir. 2001); Piper v. Oliver, 69 F.3d 875, 876 (8th Cir. 1995).  Furthermore, other courts have concluded that grants of preliminary injunctions are not talismanic indicators of whether a party should succeed on the merits.  The preliminary injunction standard is "an unhelpful guide to the legal determination of whether a party has prevailed."  Smyth v. Rivero, 282 F.3d 268, 277 (4th Cir. 2002). Preliminary injunction proceedings are "necessarily abbreviated" and "[t]he fact that a preliminary injunction is granted . . . by no means represents a determination that the claim in question will or ought to succeed ultimately."  Id. at 276.  Advantage is not a prevailing party because the prior decision was preliminary in nature and was not a decision that granted actual relief on the merits.

Because Advantage is not a prevailing party, it must establish that the unconstitutional provisions were the "cause in fact" of its § 1983 injury in order to succeed on summary judgment.  See Butler v. Dowd, 979 F.2d 661, 669 (8th Cir.

1992) (en banc).  If a Advantage's injury would not have occurred but for the unconstitutional provisions of the Former Ordinance then it is a "cause in fact" of Advantage's injury.  See id.  Likewise, if the same result would have occurred without the unconstitutional provisions, the Former Ordinance cannot be the "cause in fact" of Advantage's injuries.  See id.

The Court previously found that Plaintiffs were probably injured because they alleged an actual injury stemming from at least one unconstitutional provision of the sign ordinance.  Advantage Media, 379 F. Supp. 2d at 1037.  However, the fact that Advantage established standing does not mean that the alleged injury actually occurred.  Whether a plaintiff has demonstrated an "injury in fact" to establish standing is a distinct question from whether the injury has been proven by a preponderance of the evidence.  In order to be a prevailing party, Advantage must satisfy the higher preponderance of the evidence standard.

Summary judgment on the issue of legal damages is inappropriate at this time because it is unclear whether the City refused to process Advantage's applications because of the proposed signs' size or their content.  Advantage's Motion for Partial Summary Judgment must be denied because Advantage assumed it was a prevailing party and thus failed to show that its alleged injury occurred but for the unconstitutional provisions contained in the Former Ordinance.  The City still contends that, despite the Former Ordinance's infirmity, the denial of Advantage's sign applications was based on independent

constitutional grounds.  Thus, Advantage's request to prove its damages before a jury is premature and is therefore denied.  Whether Advantage's permits were denied because of the unconstitutional provisions of the Former Ordinance is a factual issue that must be resolved by a jury.

### F.  Conclusion

The Court will not order the City to allow the development of Advantage's proposed signs.  The 672 square foot billboards would violate the valid size restrictions in the 2005 Ordinance.  The fact that the Former Ordinance was repealed does not mean that Advantage can ignore present and valid zoning laws pertaining to signs.  If Advantage wishes to build tri-vision billboards in the City, it must comply with the 2005 Ordinance.  Any injury that Advantage might have suffered may be remedied by legal damages.

The Court views the tactics employed by Plaintiff Advantage with dim suspicion.  From the very beginning, Advantage knew its signs were two and one-half times larger than permitted by the City.  In hopes of catching the City off guard, Advantage immediately moved for an order to allow the signs to be posted after the Former Ordinance was preliminarily enjoined.  Advantage also attempted to engineer an artificial vested right by modifying its purchase contracts for the signs.  However, neither the Court's Preliminary Injunction Order nor the First Amendment gives Advantage the right to erect their 672 square foot billboards when doing so would violate the valid time, place, and manner

provisions in the 2005 Ordinance.  Advantage's actions can only lead the Court to

question Advantage's initial motivation to initiate this lawsuit.  Advantage has no

right in equity to construct 672 square foot signs because they were aware of the

maximum size restrictions and such signs are not permitted under the 2005

Ordinance.  Therefore, Advantage must comply with the 2005 Ordinance if it

wishes to construct any signs within the City.


Based upon the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1.    Plaintiff Hispanic Chamber of Commerce is **DISMISSED** as a party;

2.    Plaintiff's Motion for Partial Summary Judgment [Docket No. 20.] is
      **DENIED**; and

3.    Defendant's Motion for Summary Judgment [Docket No. 23] is
      **DENIED IN PART AND GRANTED IN PART** as follows:

      a.  Defendant's request for dismissal of Plaintiff's legal claims for
          damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and
          1988 is **DENIED**; and

      b.  Defendant's request for dismissal of Plaintiff's equitable request
          for an order to allow construction of the signs is **GRANTED.**


Dated: January 5, 2006                    s/ Michael J. Davis
                                          Judge Michael J. Davis
                                          United States District Court